Filed 9/4/24  P. v. Washington CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B329375 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA064310) |
| v. | |
| DAMON WASHINGTON, | |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Los Angeles County, Sam Ohta, Judge.  Affirmed.

Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1993, a jury convicted Damon Washington of first degree murder for his role as the driver in a drive-by shooting that resulted in the death of Lourdes Hernandez. The trial court sentenced Washington to 26 years to life in prison.

Washington now asks us to reverse the court's order denying his petition for resentencing filed pursuant to Penal Code section 1172.6 (formerly § 1170.95).[1] That section permits a defendant "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to challenge the conviction and seek resentencing on any remaining counts. (§ 1172.6, subd. (a).)

Washington concedes that the jury did not convict him pursuant to the felony murder rule or the natural and probable consequences doctrine. He urges, however, that testimony from the prosecution's gang expert improperly invited the jury to convict him of first degree murder even without finding that he personally harbored the intent to kill Hernandez. He contends further that the reasoning in *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*)—where the appellate court reversed the denial of a section 1172.6 petition due to an ambiguity created by the jury instructions—compels reversal of the court's order here.

We disagree with both contentions and affirm.

---

[1] Unless otherwise specified, all statutory references are to the Penal Code.

Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6 (Stats. 2022, ch. 58, § 10), without changing the statute's content. We hereafter cite to section 1172.6 for ease of reference.

**FACTUAL SUMMARY AND PROCEDURAL HISTORY[2]**

At approximately 10:30 p.m. on May 28, 1992, a car drove past a house located on East 21st Street in Los Angeles, where members of the Premiera Flats and Loco Park gangs were attending a party. The car's occupants shouted, "Park gang! Park gang!" Immediately thereafter, a second car— with its lights turned off—drove past the house. The driver and passenger of the second car shouted "38th Street"—the name of a rival gang—and the passenger then fired several gunshots into a group of four young women gathered in front of the house. One of the bullets struck Hernandez, a member of the Loco Park gang. Hernandez died as a result of the gunshot wound. Eyewitnesses to the shooting subsequently identified Marcos Vera as the shooter and Washington as the driver of the car from which Vera fired the shots.

The Los Angeles County District Attorney's Office charged Vera and Washington with Hernandez's murder (§ 187, subd (a)). The information alleged further that Vera and Washington had committed the offense for the benefit of a criminal street gang and thus were subject to an enhanced sentence pursuant to section 186.22, subdivision (b).

---

[2] We summarize here only the facts and procedural history relevant to our resolution of this appeal. We granted the Attorney General's request that we take judicial notice of the record in the direct appeal of Washington's conviction, and, where appropriate, our summary draws on that record. (See *People v. Washington et al.* (Nov. 30, 1994, B078472) [nonpub. opn.] (*Washington et al.*).) Although we set forth a brief account of the circumstances of the offense, we do so only to provide context for our opinion. Our resolution of Washington's appeal does not rely on this factual account, but upon the theories presented, jury instructions given, and verdicts returned at trial.

The prosecution's theory at Vera and Washington's joint trial was that the defendants had committed the shooting to enhance their status in the 38th Street gang. In support of this theory of the case, the prosecution introduced testimony from gang expert Officer Richard Arciniega. Officer Arciniega testified concerning the rivalry between the Loco Park and 38th Street gangs and—as relevant here—opined that when gang members commit a drive-by shooting, "[t]heir intent is to kill." Finally, during closing argument, the prosecution asserted that—although not the shooter—Washington acted with the intent to kill, and the jury therefore should convict him of first degree murder as a direct aider and abettor:

"[Prosecutor]: . . . You may be wondering how is it that the driver of the car, defendant Washington, can be guilty of first degree murder. How? He didn't actually pull the trigger. Well, aiding and abetting, and an aider and abettor is considered a principal. And a principal is liable for all acts jointly.

"How do we work that through? A person aids and abets a crime when he, with knowledge of the unlawful purpose—now, remember, defendant Washington is driving the car. Does he have any knowledge about what's going to happen here? What evidence is there, besides just a shooting, that shows defendant Washington, as the driver of that . . . car, knew what was going to happen? He killed the headlights as he came down the street. . . . And we heard from Officer Arciniega that it's a common practice of gang members about to do a drive-by shooting, that they kill their headlights.

"What else? Well, defendant Washington slowed right in front of the party. What does that mean? Well, if you're going to do a drive-by shooting, it's kind of hard to hit your target if you're speeding up just as the person is leaning out the window to do

the shooting.  He kills his headlights, he approaches the party, and he slows down his car.  It shows his knowledge.  It shows the knowledge of the unlawful purpose, the plan the two of them had.

"What's the third reason, the third area of proof to show defendant Washington knew what was going on?  Where were they?  They were in Loco Park territory.

"[¶] . . . [¶]

". . . . Washington and . . . Vera are seated here in this court, and the evidence has shown that they are both guilty of first degree murder of a 15-year-old girl in furtherance [of] a gang rivalry."

The trial court instructed the jury on direct aiding and abetting, as well as on the requisite elements of first and second degree murder.  These included instructions that "all murder which is perpetrated by any kind of willful[ ], deliberate and premeditated killing with express malice aforethought is murder of the first degree," and that "malice is express when there is manifested an intention unlawfully to kill a human being."  The court did not instruct on the felony murder rule, the natural and probable consequences doctrine, or any other theory of imputed malice.

The jury convicted both Washington and Vera of first degree murder, and each defendant stipulated to the truth of the section 186.22 gang allegations.  The court sentenced Washington to 26 years to life in prison, and we affirmed his conviction on appeal.  (See *Washington et al.*, *supra*, B078472.)

Almost 25 years later, "the Legislature passed Senate Bill [No.] 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a

5

major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

The bill "substantially modified the law relating to vicarious liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder [citation] and by narrowing the scope of felony murder." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 11.) The bill also added section 1172.6, which provides a procedure whereby "convicted murderers who could not be convicted under the law as amended" may petition to have their conviction vacated and be resentenced on any remaining counts. (*Lewis*, *supra*, 11 Cal.5th at p. 959.) Via Senate Bill No. 775, the Legislature subsequently expanded the scope of section 1172.6's relief to defendants convicted of murder pursuant to any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1); *Lewis*, *supra*, 11 Cal.5th at pp. 957, 959.)

Defendants who fall within section 1172.6's parameters may seek the relief the statute contemplates by "fil[ing] a resentencing petition . . . alleging they could not currently be convicted of murder because of the changes in the law required by Senate Bill No. 1437." (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 891.) "If [a] petitioner ma[kes] a prima facie showing for relief, the trial court [is] required to issue an order to show cause for an evidentiary hearing." (*Ibid.*, citing § 1172.6, subd. (c).)

In assessing eligibility at the prima facie stage, the court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations

6

were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  The court may deny the petition at the prima facie stage if the record of conviction "conclusively establishes every element of the offense" under a theory of murder that remains valid following the enactment of Senate Bill Nos. 1437 and 775.  (*People v. Curiel* (2023) 15 Cal.5th 433, 463.)  Where a trial court denies a section 1172.6 petition based on the failure to make a prima facie case for relief, our review is de novo.  (See *People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

Washington filed a form section 1172.6 petition challenging his murder conviction, and the trial court appointed counsel to represent him in the proceedings.  The prosecution filed an opposition to the petition, arguing that Washington is categorically ineligible for section 1172.6 relief because "the jury was not instructed on natural and probable consequences, felony murder[,] or any other theory that allowed the jury to impute malice to [him]"; instead, Washington's "conviction was based on his being a principal who acted with actual malice."

Relying in part on *Langi*, Washington argued in response that "based on the instructions given, the jury could have convicted [him] of murder based not on a finding of actual malice, but on imputing malice to him based on his participation in the crime of driving the shooter who was charged with murder."

At the hearing on the petition, the trial court rejected Washington's attempt to analogize his case to *Langi* and denied his request for section 1172.6 relief:

"Unlike the second-degree implied malice/aiding and abetting instructional problem which potentially permitted the jury to convict Langi without the necessity of finding on [*sic*] the required mental state, the only path the trial court instructed for the jury to arrive at first-degree murder [in Washington's

7

case] was through [CALJIC No.] 8.20 on willful, deliberate, and premeditated murder, which required the jury to find express malice or state[d] . . . differently, the intent to kill, which comports with [Senate Bill No.] 1437 for aiders and abettors.

"[¶] . . . [¶]

"As such, the court declines to make an order to show cause."

Washington timely appealed.

## DISCUSSION

Washington is ineligible for section 1172.6 relief as a matter of law because the record establishes that the jury convicted him of first degree murder as a direct aider and abettor—a theory of murder liability that remains valid post-Senate Bill Nos. 1437 and 775. (See *Coley*, *supra*, 77 Cal.App.4th at p. 546.)

The prosecution presented only one theory of first degree murder to the jury: that Washington personally harbored the intent to kill and committed a willful, deliberate, premeditated killing as a direct aider and abettor. Consistent with this theory, the trial court instructed the jury on direct aiding and abetting, and instructed further that the jury could convict Washington of first degree murder as an aider and abettor only if it found "a clear, deliberate intent on [his] part . . . to kill." The court did not instruct on the felony murder rule, the natural and probable consequences doctrine, or any other theory pursuant to which malice may be imputed to a defendant. The record therefore establishes that, in convicting Washington of first degree murder, the jury found beyond a reasonable doubt that he acted with express malice, along with the other requisite

8

elements of the offense. He therefore is categorically ineligible for section 1172.6 relief. (See *Curiel, supra*, 15 Cal.5th at p. 462.)

Neither of Washington's arguments in opposition persuades us otherwise. Citing no supporting authority,[3] Washington first argues that Officer Arciniega's testimony that "the purpose of a drive-by shooting [is] to kill a rival gang member . . . improperly imputed malice to [Washington] based solely on his participation in the crime." He urges that recent amendments to the proof requirements for section 186.22 gang allegations further demonstrate the impropriety of Officer Arciniega's testimony.[4] But Officer Arciniega's testimony did not invite the jury to impute malice to Washington; to the contrary, Officer Arciniega's testimony concerning the purpose of gang drive-by shootings was itself evidence that Washington personally harbored the intent to kill Hernandez. And Washington fails to explain adequately the

---

[3] Washington concedes that he has "found no published case directly addressing whether malice can be imputed based solely on participation in a drive-by shooting."

[4] As noted, *ante*, section 186.22, subdivision (b) provides for an enhanced sentence for "[a] defendant who commits a felony 'for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members.' " (*People v. Sek* (2022) 74 Cal.App.5th 657, 664 (*Sek*), quoting § 186.22, subd. (b)(1).) Assembly Bill No. 333, which took effect on January 1, 2022, "amended section 186.22 to impose new substantive and procedural requirements for gang allegations." (*Id.* at p. 665.) "Most notably, the law defined 'to benefit, promote, further, or assist' as 'to provide a common benefit to members of a gang where the common benefit is more than reputational.' " (*Ibid.*)

relevance of the amendments to section 186.22 to the issues presented in this appeal.

Washington's second argument is similarly unpersuasive. He concedes that the jury did not convict him pursuant to the felony murder rule or the natural and probable consequences doctrine, but argues—relying on *Langi*—that "the direct aiding and abetting instructions in this case may have caused the jury to convict based on imputed malice."

*Langi*, however, is distinguishable. In *Langi*, a jury convicted the defendant of second degree murder, as one of four men who had beaten the victim to death. (*Langi*, *supra*, 73 Cal.App.5th at p. 975.) The appellate court reversed the trial court's summary denial of Langi's section 1172.6 petition, explaining that (1) the record did not conclusively establish that Langi had thrown the fatal punch, and (2) the combination of the aiding and abetting (CALJIC No. 3.01) and second degree murder (CALJIC No. 8.31) instructions provided to the jurors created an ambiguity that permitted them to convict Langi based solely on an impermissible theory of imputed malice.

The *Langi* court explained, in relevant part: "The aiding-and-abetting instruction stated that a person aids and abets a crime if he or she acts 'with knowledge of the unlawful purpose of the perpetrator, and . . . with the intent or purpose of committing or encouraging or facilitating the commission of the crime.' (CALJIC No. 3.01. . . . ) However, . . . the second degree murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death. Thus, while the perpetrator must have deliberately performed the fatal act 'with knowledge of the danger to, and with conscious disregard for, human life' (CALJIC No. 8.31), his purpose may have been only to strike or to injure, or conceivably only to

embarrass, the victim.  Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill.  If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent." (*Langi*, *supra*, 73 Cal.App.5th at pp. 982–983.)

Washington is correct that, as in *Langi*, the court here instructed the jury on aiding and abetting using CALJIC No. 3.01 and on second degree murder using CALJIC No. 8.31. But in contrast to *Langi*, the jury convicted both Washington and Vera of first degree murder.  Washington's jury thus necessarily determined that he acted with express malice, and his conviction therefore is untainted by the instructional ambiguity identified by the *Langi* court.

Accordingly, the trial court properly denied Washington's section 1172.6 petition at the prima facie stage.

## DISPOSITION

We affirm the trial court's order denying Washington's section 1172.6 petition.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


KELLEY, J.*

---

    **\*** Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.